United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES T. ROARY,                              No. C 10-03663 CW

      Plaintiff,                         ORDER DENYING
                                             PLAINTIFF'S MOTION
  v.                                         FOR SUMMARY JUDGMENT
                                             OR REMAND (Docket
MICHAEL J. ASTRUE, Commissioner of           No. 18) AND GRANTING
Social Security,                             DEFENDANT'S CROSS-
                                             MOTION FOR SUMMARY
      Defendant.                         JUDGMENT (Docket No.
_____/             19).


    In this appeal of an unfavorable final decision regarding

eligibility for Supplemental Security Income (SSI) disability

benefits, Plaintiff James T. Roary moves for summary judgment or

remand.  Defendant Michael J. Astrue in his capacity as

Commissioner of Social Security opposes the motion and cross-moves

for summary judgment.  Having considered all of the papers filed by

the parties, the Court DENIES Plaintiff's motion for summary

judgment or remand and GRANTS Defendant's cross-motion for summary

judgment.

PROCEDURAL BACKGROUND

    On March 13, 2008, Plaintiff James T. Roary applied for SSI

disability benefits under Title XVI of the Social Security Act,

United States District Court
For the Northern District of California

alleging that he had been disabled since January 1, 2003.[1]  AR 127.
The Social Security Administration (SSA) denied Plaintiff's
application on initial review in August 2008 and on reconsideration
in October 2008.  AR 75-79, 81-86.  In November 2008, Plaintiff
requested a hearing before an administrative law judge (ALJ).  AR
87.  The ALJ conducted a hearing on August 11, 2009, and took
testimony from Plaintiff and three witnesses: Nikita Roary,
Plaintiff's daughter; Lisa Burton, a friend of the Plaintiff's; and
Lynda Berkley, an impartial vocational expert.  AR 36-71, 102-105.
Plaintiff waived his right to representation during the hearing.
AR 25.

In a written opinion, the ALJ determined that Plaintiff had
the residual functional capacity (RFC) to perform light work
involving simple one- or two-step tasks and interactions with small
groups of co-workers, but could not interact with the general
public.  AR 20.  Based on the testimony of the vocational expert,
the ALJ found that work consistent with these limitations exists in
significant numbers in the national economy.  AR 23.  As a result,
he concluded that Plaintiff is not disabled under the Social
Security Act.  AR 24.

Plaintiff secured counsel and timely requested a review of the
ALJ's hearing decision by the Appeals Council of the SSA Office of
Disability Adjudication and Review.  AR 11-12; 116-126.  In June

---

[1] There does not appear to be agreement on the date that
Plaintiff filed a protective application for SSI. The ALJ's opinion
cites February 27, 2008 as the date, AR 16, while Defendant's
cross-motion indicates a date of February 18, 2008. Def.'s Motion
at 1.

2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, establishing the hearing outcome as the final decision of the Commissioner of Social Security.  AR 1-3.  Pursuant to 42 U.S.C. § 405(g), Plaintiff then commenced this civil action and was granted leave to proceed in forma pauperis.  (Docket Nos. 1, 4).

FACTUAL BACKGROUND

I. Plaintiff's Personal History

Plaintiff is a fifty-year-old male with an eleventh grade education and no vocational training.  AR 42-44, 127-128.  He currently resides with his mother and one of his two adult children in Marin City, California.  AR 43, 127-128.  Plaintiff served in the United States Armed Forces from 1979 to 1982.  AR 129.  After his military service, Plaintiff worked intermittently as a laborer during the following time periods: 1985-1986, 1989, 1991-1995, 2000-2001, and 2007-2008.  AR 141-142. Plaintiff's most recent full-time employment was in 2000-2001 as a construction laborer. AR 155, 160-161.  In 2004, Plaintiff's girlfriend, the mother of his children, passed away.  AR 46.  That same year, Plaintiff became the caretaker for his father, a recent stroke victim.  His father subsequently passed away in 2005.  AR 51.  Most recently, Plaintiff worked as a landscaper.[2]  AR 155, 160.  His highest

_____

[2] The record includes inconsistent statements about the duration of Plaintiff's employment in this position.  Plaintiff indicated on a work activity report dated March 21, 2008, that he had started working at Standler Landscaping in December 2007 and was currently working sixteen hours per week.  AR 147.  During the administrative hearing, Plaintiff indicated that his last job was in landscaping, began in 2007, and lasted "[p]robably 30 days or less."  AR 44.

annual income appears to have been approximately $12,500 in 1994,
when he worked at a grocery store for Lucky Stores, Inc.  AR 135.

II. Plaintiff's Medical History

Plaintiff alleges that he has been unable to work since
January 1, 2003, because of debilitating physical and mental
disabilities.  AR 127, 154.  The physical disability is lower back
pain that Plaintiff believes developed from strenuous physical
activity performed during his military service.  AR 49.  Plaintiff
also complains of chronic migraines that require him periodically
to lie down and rest.  AR 49-51.  The mental disability is
depression, which prevents Plaintiff from concentrating and
functioning in crowds.  AR 154.  During the administrative hearing,
he reported taking Vicodin for back pain, Oxycontin for migraines,
and Celexa for depression.  AR 47, 52.

Plaintiff's extensive medical record includes two consultative
examination reports; two assessments of physical residual
functional capacity (PRFC), one conducted at the initial claim
phase and another conducted at the reconsideration phase; and two
assessments of mental residual functional capacity (MRFC), one
conducted at the initial claim phase and another conducted at the
reconsideration phase.

The consultative examination of Plaintiff's physical state was
performed by Dr. Frank Chen, M.D., at the Bay View Medical Clinic
on June 17, 2008.  AR 254-256.  Based on a review of Plaintiff's
medical records and a physical examination, Dr. Chen diagnosed
Plaintiff with symptoms of chronic back pain (with negative exam)
and non-specific headaches.  AR 256.  He concluded that Plaintiff

4

could stand or walk for at least six hours during an eight-hour work day, sit for an entire work day, and lift twenty-five pounds frequently and fifty pounds occasionally.  AR 256.  The report states that Plaintiff had no postural, manipulative, visual, communicative, or workplace environmental limitations.  AR 256.

The first PRFC assessment was completed for the initial SSI application in July 2008 by Dr. P. Kammen, M.D.  AR 260-264.  Dr. Kammen diagnosed Plaintiff with "low back pain" and joined the examining physician's opinion that Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally, and stand or walk for at least six hours in an eight-hour work day.  AR 261.  Dr. Kammen departed from the examining physician's opinion only in concluding that Plaintiff could sit for about six hours in an eight-hour work day, rather than for the entire day.  Like the examining physician, he found no postural, manipulative, visual, communicative, or environmental limitations.  AR 262-264.

In October 2008, Dr. S. Amon, M.D., performed a second PRFC for the SSA's reconsideration of Plaintiff's application.  AR 327-331.  Dr. Amon identified the same exertional limitations as Dr. Kammen and noted that his findings did not differ significantly from the examining opinion.  AR 331.  He did point out, however, that the reported severity and duration of the symptoms were disproportionate to those expected of Plaintiff's condition, and wrote that Plaintiff's "statements are not entirely supported by the evidence in file."  AR 331.

A consultative examination of Plaintiff's mental condition was performed by Dr. Ahmed El-Sokkary, Psy.D., at the Bay View Medical

5

United States District Court
For the Northern District of California

Clinic on June 19, 2008.  AR 257-259.  Following the evaluation, Dr. El-Sokkary diagnosed Plaintiff with a mood disorder not otherwise specified (NOS), ruling out both post-traumatic stress disorder (PTSD) and borderline intellectual functioning.  AR 258-259.  He observed that Plaintiff "demonstrated a capacity to understand, remember, and perform simple tasks," but that issues with pace, persistence, and concentration would result in "some difficulty in a highly competitive work setting."  AR 259.  Dr. El-Sokkary further concluded that, because Plaintiff lacked relational and interpersonal skills, he would have "some difficulty appropriately interacting with supervisors and co-workers at this time."  AR 259.

Plaintiff's first MRFC assessment was conducted by Dr. Norman Zukowsky, Ph.D., in July 2008.  AR 279-281.  Dr. Zukowsky determined that Plaintiff was "moderately limited" in his ability to understand and remember instructions; carry out instructions; maintain attention and concentration for extended periods; work in coordination or proximity to others; complete a normal work day without interruptions from psychological symptoms; interact appropriately with the general public; work under supervisors; get along with coworkers; and respond appropriately to changes in work setting.  AR 279-280.  In his functional capacity assessment, Dr. Zukowsky opined that Plaintiff could maintain attendance and perform "very short and simple one- and two-step tasks," but that psychiatric symptoms might "interfere with interactions with co-workers and supervisors" and make it difficult for him to adapt to "ordinary workplace stressors and changes."  AR 281.  He

United States District Court
For the Northern District of California

recommended that Plaintiff "not interact with the public." Zukowsky qualified this assessment, however, by writing that these limitations are moderate and are not "to the point of precluding all work." AR 281. The report concluded with the following statement: "Chances of employment success can be maximized by duties in a nonpublic, low-stress setting with minimal interactions with supervisors and co-workers." AR 281.

After Plaintiff's SSI application was initially denied, a reconsideration-level MRFC assessment was conducted by Dr. Philip Walls, M.D., in October 2008. AR 348-351. Dr. Walls found that Plaintiff was "moderately limited" in his ability to maintain attention and concentration for extended periods; work in coordination or proximity to others; complete a normal work day without interruptions from psychological symptoms; interact appropriately with the general public; work under supervisors; and get along with coworkers. These findings are identical to Dr. Zukowsky's except that Dr. Walls did not find a significant limitation on Plaintiff's ability to understand and remember instructions; carry out instructions; or respond appropriately to changes in work setting.

Dr. Walls made four summary findings about Plaintiff's functional capacity: (1) Plaintiff could understand "instructions of ordinary complexity;" (2) Plaintiff's depression and anxiety symptoms would impose "minimal limitation" on concentration, persistence, and pace; (3) Plaintiff would have problems working in crowds "but could manage interactions with small groups of coworkers;" and (4) Plaintiff could adapt to changing workplace

routines.  AR 350.

In addition to the opinions and notes of the examining and non-examining doctors, the record also contains mention by Plaintiff that he periodically sees a therapist for ongoing mental health issues related to the loss of his girlfriend and father, as well as childhood trauma.  AR 53, 257.  Documentation of ongoing mental health treatment was not included in the administrative record.

III. The ALJ's Disability Determination

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) to determine Plaintiff's eligibility for disability benefits.[3] The ALJ determined that Plaintiff did not meet the basic definition of disability for adults, 20 C.F.R. § 416.905(a), and therefore did not qualify for disability benefits.

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application for benefits.  AR 18.  At the second step, the ALJ found, based on medical records from March 2006 through July 2009, that Plaintiff suffered from degenerative disc disease, headaches, and a non-specific mood disorder.  AR 18.  According to the opinion, these conditions qualified as "severe impairments" because

---

[3] In this process, the ALJ must respond in sequence to each of the following five questions: (1) is the claimant engaged in substantial gainful activity; (2) if not, does the claimant have a severe impairment or combination of impairments; (3) if so, are the impairments listed in, or as severe as those listed in Appendix 1; (4) if not, do the impairments preclude the claimant from performing past relevant work; and (5) if so, is other work precluded?  20 C.F.R. § 416.920(a)(4)(i)-(v).

8

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   they "significantly limit basic work functions."  AR 18.

2       At the third step, the ALJ found that Plaintiff was not

3   presumed disabled under federal regulations because none of his

4   impairments met or equaled an impairment listed in 20 C.F.R. Pt.

5   404, Subpt. P, App. 1 (Appendix 1).  AR 18-19.  The ALJ noted that

6   Plaintiff's chronic back pain did not "reflect the neurological

7   abnormalities, arachnoiditis or spinal stenosis of the severity

8   required to meet Listing 1.04 [disorders of the spine]."  AR 19.

9   Further, he determined that Plantiff's headaches and non-specific

10  mood disorder did not satisfy the criteria of Listing 12.04, which

11  governs affective disorders.  AR 19.  To meet or equal the

12  impairments in that listing, a medically documented mental health

13  condition must satisfy the requirements of Paragraph B or C.

14      Under Paragraph B, the claimant's medically documented

15  affective disorder must result in two of the following four

16  conditions: (1) marked[4] restriction of activities in daily living;

17  (2) marked difficulties in maintaining social functioning;

18  (3) marked difficulties in maintaining concentration, persistence,

19  or pace; or (4) repeated episodes of decompensation, each of

20  extended duration.  Appendix 1; AR 19.  The ALJ found that

21  Plaintiff experienced moderate restriction of activities in daily

22  living; moderate difficulties both with social functioning and

23  maintaining concentration, persistence, or pace; and "has

24  experienced no episodes of decompensation."  AR 19.  Because the

25  ALJ did not find a "marked limitation" in at least two categories,

26  _____

27      [4] A "marked" limitation or restriction means more than
    "moderate" but less than "extreme."  AR 19.

28                                  9

he determined that Plaintiff did not satisfy the requirements of Paragraph B.  Alternatively, a claimant can meet the severity criterion for a 12.04 affective disorder under Paragraph C. However, the ALJ concluded that Plaintiff did not establish severity under Paragraph C because the record did not reflect "repeated or any episodes of decompensation, propensity toward decompensation or need for a highly supportive living arrangement." AR 20.

Because Plaintiff was not determined to be disabled at the third step, the ALJ moved to the fourth step of the inquiry and assessed Plaintiff's residual functional capacity and ability to perform past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) "except that the claimant can understand and perform simple, one to two step tasks, should have no interaction with the general public, can work in small group settings and adapt to normal changes in routine."  AR 20.  In reaching this conclusion, the ALJ followed a two-step process.  First, he decided whether Plaintiff had a medically determinable impairment that caused his symptoms. Second, he considered the extent to which the "intensity, persistence, and limiting effects" of the symptoms circumscribed Plaintiff's ability to perform basic work activities.  AR 20.  The ALJ readily discerned that Plaintiff had medically determinable physical and mental impairments that caused his symptoms.  The ALJ concluded, however, that in spite of these symptoms, Plaintiff had the residual functional capacity to perform light work under the

**United States District Court**
For the Northern District of California

limitations described above.

The ALJ determined that Plaintiff had the physical residual functional capacity to perform "light exertion."  This conclusion deviated from the PRFC assessments performed by the examining physician, Dr. Chen, and the state agency physicians, Drs. Kammen and Amon.  AR 21.  While the three doctors found Plaintiff capable of performing medium-level work, the ALJ believed, based on Plaintiff's past treatment and use of prescription medications, that "a full range of light work [would] be more appropriate." AR 21.

With respect to mental residual functional capacity, the ALJ determined that Plaintiff could perform light work so long as it was simple, broken into one- to two-step tasks, did not necessitate interaction with the general public, did not require interaction beyond small group settings, and did not involve frequent or radical changes in routine.  AR 20.  In reaching this MRFC determination, the ALJ explained that he "accorded substantial weight" to the assessment performed by Dr. Walls in October 2008, because he deemed it to be "consistent with the ongoing mental health treatment for the claimant's depression" as well as his subjective complaints.  AR 21.  The ALJ found that the assessment of examining physician Dr. El-Sokkary, which identified Plaintiff's potential difficulty interacting with co-workers and supervisors, as "more limiting than supported by the mental health treatment notes and the record."  The ALJ deferred to Dr. Walls' assessment because it was both more recent and "more reflective of the claimant's current depression symptoms and treatment, which is also

11

more consistent with the record as a whole."  AR 21.

The ALJ observed that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [residual functional capacity findings]."  AR 22.  The ALJ noted that Plaintiff cared for his father in the year leading up to his death and continued to assist his mother from time to time.  AR 22. He also pointed out that Plaintiff could prepare his own meals, complete hygienic and grooming tasks, and perform other acts "demonstrat[ing] a functional capacity that diminishes the claimant's allegations."  AR 22-23.

Having established that Plaintiff was capable of light work (subject to limitations) but had no past relevant work experience, the ALJ then moved to the fifth step of the five-part analysis and asked whether, given Plaintiff's age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that Plaintiff could perform. AR 23.  The opinion cited the independent vocational expert, who testified during the hearing that Plaintiff could perform the duties of a mail clerk or office helper, two jobs available in sizable numbers in the Bay Area.  Based on this expert testimony, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  AR 24.  Accordingly, he found that Plaintiff was not subject to a disability as defined by 20 C.F.R. § 416.920(g).

United States District Court
For the Northern District of California

LEGAL STANDARD

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Sandqathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether a decision is supported by substantial evidence, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ. Walker v. Mathews, 546 F.2d 814, 818 (9th Cir. 1976). It must weigh the evidence that supports the Commissioner's conclusions and that which does not. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). A court "may not affirm simply by isolating a specific quantum of supporting evidence." Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If there is substantial evidence to support the decision of the ALJ, it must be affirmed. Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979).

In the context of SSI benefits, a disability means an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). An individual can be considered disabled only if his or her physical or mental impairment is so severe that

13

he or she "is not only unable to do his [or her] previous work but
cannot . . . engage in any other kind of substantial gainful work."
§ 423(d)(2)(A).

DISCUSSION

Plaintiff argues that: (1) in his determination of mental
residual functional capacity, the ALJ adopted a non-examining
source opinion over the examining source opinion, which is error
under Ninth Circuit precedent; and (2) the ALJ's credibility
findings were erroneous because he failed to justify them, to
develop the record, and to consider third party testimony.
Plaintiff contends that these mistakes constitute reversible error
and warrant setting aside the Commissioner's final decision or
remanding the case for further administrative proceedings.

I.   The ALJ Did Not Err in His MRFC Determination

Plaintiff first argues that the ALJ's mental residual
functional capacity determination relied on the medical opinions of
Drs. Zukowsky and Walls, the non-examining physicians, instead of
the medical opinion of examining physician Dr. El-Sokkary.  He
asserts that this departs from Ninth Circuit precedent and is a
basis for reversal or remand.

As a general rule, the opinion of a treating doctor should be
given more weight than the opinions of examining or consulting
doctors.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).
Where a treating physician's opinion is contradicted by another
doctor, the Commissioner may reject the treating physician's
opinion, but must provide "specific, legitimate reasons" supported
by substantial evidence in the record.  Rodriquez v. Bowen, 876

United States District Court
For the Northern District of California

14

F.2d 759, 762 (9th Cir. 1989); <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983).

Plaintiff's argument is based on the mistaken assumption that Dr. El-Sokkary's opinion cannot be squared with the MRFC assessments of Drs. Zukowsky and Walls.  On the contrary, the three doctors appear to be in near-total agreement that Plaintiff would have moderate difficulty interacting with co-workers and supervisors, but that this limitation is not severe enough to preclude him from seeking and maintaining stable employment.  While Dr. El-Sokkary indicated that Plaintiff "would have some difficulty appropriately interacting with supervisors and co-workers at this time," he did not analyze the effect of this limitation on Plaintiff's ability to function in the workplace.  AR 259.

The MRFC assessments are consistent with this opinion.  In the "summary conclusions" section of his report, Dr. Zukowsky checked the "moderately limited" box next to statements describing social interactions with the general public, supervisors, and co-workers. AR 280.  Dr. Zukowsky wrote that "psychiatric symptoms may interfere with interactions with co-workers and supervisors, but not to the point of precluding all work."  AR 281.  Dr. Walls' reconsideration-level MRFC essentially joined the opinions of the two psychologists.  Dr. Walls checked "moderately limited" for the same social interaction statements that Dr. Zukowsky checked.  AR 349.  He wrote that Plaintiff "would have difficulty interacting with the public, crowds, but could manage interactions with small groups of co-workers."  AR 350.  While Dr. Walls' narrative did not include commentary on Plaintiff's ability to function under the

15

control of a supervisor, he checked the "moderately limited" box next to a statement about Plaintiff's "ability to accept instructions and respond appropriately to criticism from supervisors."  AR 349.  His overall assessment does not meaningfully depart from those of Drs. El-Sokkary and Zukowsky. For these reasons, the ALJ correctly characterized the examining opinion and MRFC assessments as "generally consistent."  AR 21.

This case is not, then, one in which the opinions of the non-examining sources clearly contradict the examining source opinion, as Plaintiff alleges.  Rather, it involves an examining opinion and two MRFC assessments that are in harmony on the major issues and differ only insofar as each assessment emphasizes different aspects of the functional limitations.

During his evaluation, the ALJ "accorded substantial weight" to Dr. Walls' October 2008 assessment, and concluded that Plaintiff's mental health limitations did not prevent him from working in small groups.  AR 348.  Plaintiff argues, based on this statement, that the ALJ adopted Dr. Walls' "small groups" opinion to the exclusion of Dr. El-Sokkary's opinion that Plaintiff would have "some difficulty" in workplace interactions with others.  The record does not bear out this conclusion.  No statement in Dr. El-Sokkary's or Dr. Zukowsky's opinions contradicts Dr. Walls' conclusion that Plaintiff "could manage interactions with small groups of co-workers."  AR 350.  Dr. El-Sokkary's opinion merely states that there would be "some" interactional difficulty, which is not qualitatively different from Drs. Walls' and Zukowsky's characterization of Plaintiff's interactional limitations as

"moderate."

Plaintiff argues that the medical opinions' description of his functional capacity does not necessarily result in a finding that he has the MRFC to work in small groups.  That the medical opinions support an alternative finding of mental residual functional capacity does not undermine the ALJ's conclusion.  The ALJ's decision must be affirmed when the evidence is susceptible to more than one rational interpretation.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  Accordingly, the Court concludes that the ALJ did not err in his evaluation of expert medical opinion to determine Plaintiff's mental residual functional capacity.

Plaintiff argues that an RFC determination based exclusively on the opinions of a non-examining psychologist and physician cannot satisfy Defendant's burden to demonstrate "substantial evidence" in support of the administrative decision.  However, the ALJ did not rely solely on the medical opinions of the non-examining doctors.  In finding that Plaintiff had the mental residual functional capacity to work in small group settings and adapt to changes in routine, the ALJ observed that Plaintiff engaged in a number of behaviors evincing the requisite interpersonal skills to work in small groups and report to a supervisor.  AR 19.  The ALJ noted that, while Plaintiff "does not have a social life any more," he "is able to go shopping, and assisted his mother, including taking her to appointments."  AR 19 (citations omitted).  The ALJ also cited testimony from Plaintiff's friend, Lisa Burton, who indicated that Plaintiff goes out and spends time with his friends several times each week.  AR 19.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff contends that the ALJ's justifications for his RFC determination are "vague and general." Pl.'s Motion at 4. However, the ALJ's opinion indicates that "[t]he objective evidence also supports the October 2008 state agency consulting physician's opinion and the residual functional capacity found herein." AR 21. Paragraphs immediately following suggest that the ALJ concluded, based on Plaintiff's own representations, that medication enabled him to overcome his interactional limitations. During his testimony, Plaintiff specifically noted that Celexa had attenuated many of the depression symptoms and that counseling sessions had helped him a great deal. AR 22.

Based on reports from examining and consulting doctors, testimony from witnesses during the administrative hearing, and the Plaintiff's treatment history, the ALJ reached a reasoned conclusion that Plaintiff's residual functional capacity permitted him to work with others in small groups and under the direction of a supervisor. AR 21. Even if this finding conflicted with the opinion of the examining psychologist, the ALJ substantiated his decision with sufficient evidence. Accordingly, the Court finds that the ALJ relied on "substantial evidence" to support his RFC determination and ultimate decision.

II.  The ALJ's Credibility Findings Were Not Erroneous

In part, the ALJ justified his finding that Plaintiff had the residual functional capacity to perform light work under the specified constraints (i.e., few steps, small groups) by challenging the credibility of Plaintiff's statements about the extent of the limitations imposed by his symptoms. AR 22. The ALJ

18

United States District Court
For the Northern District of California

indicated that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with the above residual capacity assessment." AR 22.  Plaintiff's second challenge to the administrative decision is that the ALJ erroneously found Plaintiff's subjective statements less than fully credible. Specifically, Plaintiff alleges that the ALJ (1) did not follow Social Security Ruling 96-7p in his evaluation of Plaintiff's subjective complaints; (2) failed to develop the record properly; and (3) failed to address third-party lay testimony.

Plaintiff argues that the ALJ did not evaluate Plaintiff's subjective complaints under the framework set forth in Social Security Ruling 96-7p.  Under SSR 96-7p, an ALJ can reject a claimant's testimony about the severity of his or her symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Id. at 1284. To determine a claimant's credibility regarding the severity of his or her symptoms, the ALJ may consider, "for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id.

Here, the ALJ stated that he did not fully credit Plaintiff's

19

United States District Court
For the Northern District of California

statements about the limiting effects of his symptoms for a number of reasons.  AR 22.  He found that Plaintiff's treatment for back pain and headaches was "minimal" and "essentially routine and/or conservative in nature" in light of the alleged symptoms.  AR 22. He also highlighted that Plaintiff had never sought treatment from a specialist or taken other steps that would be expected of a person who is "non-responsive to general conservation [sic] medical attention."  AR 22.  In particular, the ALJ discounted Plaintiff's characterization of the severity of his mental disabilities by pointing to his "limited overall mental health treatment."  AR 22. Plaintiff had been prescribed Celexa, admitted that it worked well, and had not attempted to escalate or otherwise modify his treatment in any way.  Further, the ALJ mentioned Plaintiff's daily activities, which included cooking meals, performing light housework, and assisting his infirm mother, as evidence that his functional limitations were not as grave as alleged.  AR 22-23.

Plaintiff maintains that SSR 96-7p precludes an ALJ from reaching conclusions about his symptoms without evaluating all evidence "that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p.  The ALJ's inquiry into Plaintiff's treatment was more than sufficient.  He asked Plaintiff if Vicodin relieved his back symptoms, Oxycontin relieved his headache symptoms, and Celexa adequately addressed his depression.  To each of these questions, Plaintiff replied in the affirmative.  AR 50, 52.  The ALJ gave Plaintiff multiple opportunities to describe the effectiveness of his treatment, and Plaintiff repeatedly responded that the treatments were effective.

United States District Court
For the Northern District of California

Based on Plaintiff's testimony, the ALJ reasonably concluded that Plaintiff's physical and mental symptoms were not consistent with the limitations Plaintiff claimed.

Plaintiff's second challenge to the ALJ's credibility determination is that the ALJ failed to develop the record by exploring other treatments that Plaintiff had received, including counseling at the Ritter House.  The ALJ has a duty in Social Security cases to develop the record fully and fairly in order to make an informed decision about a claimant's entitlement to SSI benefits.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). In this case, the ALJ sufficiently probed Plaintiff's current and prior treatment.  The ALJ specifically asked if Plaintiff had participated in therapy and, after Plaintiff responded in the affirmative, the ALJ followed up with questions about the nature, duration, and success of the treatment.  There is no basis for concluding that the ALJ failed to develop the record.

Finally, Plaintiff argues that the ALJ's credibility finding was defective because the ALJ failed to consider properly the testimony of third-party lay witnesses.  In particular, Plaintiff alleges that the ALJ did not take the testimony of Plaintiff's daughter and friend into account in his consideration of Plaintiff's subjective statements and consequent determination of residual functional capacity.

In a claim for disability benefits, the Commissioner will consider "observations by non-medical sources" as evidence of the claimant's impairment.  See 20 C.F.R. § 404.1513(d)(4).  Lay witness testimony by friends, neighbors, and family members in a

**United States District Court**
For the Northern District of California

1 position to observe the claimant's symptoms is competent evidence.

2 See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987); Bilby v.

3 Schweiker, 762 F.2d 716, 719 n.3 (9th Cir. 1985).

4     Given that the decisional analysis included numerous

5 references to the testimony of Plaintiff's daughter and friend,

6 there can be little doubt that it was duly considered by the ALJ.

7 The ALJ declared at the fourth step that the disjunction between

8 Plaintiff's testimony and objective medical evidence required "a

9 finding on the credibility of the statements based on a

10 consideration of the entire case record."  AR 20.  The ALJ

11 concluded from the lay testimony that Plaintiff had "some moderate

12 limitations in activities of daily living, social functioning and

13 concentration, persistence and pace."  AR 19.  This conclusion was

14 repeated throughout the analysis and is consistent with the medical

15 expert opinions.  The ALJ is not under any obligation to repeat

16 inferences drawn from lay testimony throughout his analysis.

17 Plaintiff's suggestion that the ALJ did not consider third-party

18 lay testimony is inaccurate.  Accordingly, the Court does not find

19 error on this basis.

20                          CONCLUSION

21     The Court finds that the ALJ's decision that Plaintiff is not

22 disabled within the meaning of the Social Security Act was

23 supported by substantial evidence in the record and was based upon

24 proper legal standards.  Accordingly, Plaintiff's motion for

25 summary judgment or remand is DENIED (Docket No. 18) and

26 Defendant's cross-motion for summary judgment is GRANTED.  (Docket

27 No. 19).  The Clerk shall enter judgment accordingly and close the

28                             22

file.   Each party shall bear his own costs.

    IT IS SO ORDERED.


Dated: 1/6/2012

                                    CLAUDIA WILKEN
                                    United States District Judge

23